UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SANTOS VELEZ,

                              Plaintiff,


              vs.
                                                         9:05-CV-342

M.T. GULDAN, DDS; N. SMITH, Nurse Administrator;         (J. Kahn)
and SUPERINTENDENT WOODS,
                              Defendants.

_____

SANTOS VELEZ, Plaintiff *Pro Se*
JAMES B. McGOWAN, Assistant Attorney General for Defendants

GUSTAVE J. DI BIANCO, United States Magistrate Judge

## REPORT-RECOMMENDATION

      This matter has been referred to me for Report and Recommendation by the

Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28

U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

            In this amended civil rights complaint, plaintiff, an inmate in the custody

of the New York Department of Correctional Services ("DOCS"), alleges that

employees of DOCS were deliberately indifferent to his serious medical need for

dental care.  Plaintiff also alleges that the dental care he received was inadequate.

(Amended Complaint ("AC")[1], pp. 11-12 (Dkt. No. 22)).  Plaintiff contends that he

_____

[1] The amended complaint is Docket Number 22.  The court will cite the amended
complaint only as "AC."  Where the portion of the Amended Complaint is easily identified by
numbered paragraphs, the court will identify the paragraph number.  Otherwise, the court will
refer to the page as above.

lost at least one tooth because of a lengthy delay in giving him dental care.  Plaintiff seeks substantial monetary relief.

Presently before the court is defendants' motion for summary judgment in favor of all three defendants, pursuant to FED. R. CIV. P. 56. (Dkt. No. 43).  Plaintiff opposes defendants' motion, and makes a cross-motion for summary judgment.  (Dkt. No. 53).  For the following reasons, this court will recommend that the motion for summary judgment be granted as to all claims against Defendants Nurse Administrator Smith and Superintendent Woods, and granted in part and denied in part as to the claims against Defendant Dr. Guldan.

## DISCUSSION

### 1.   <u>Summary Judgment</u>

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact.  FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted).  "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*.  However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  At

that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial.  *Id*.  A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant.  *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

**2.    Facts**

Plaintiff Santos Velez was transferred into Upstate Correctional Facility in July 2002.  Plaintiff's Ambulatory Health Records indicate that plaintiff received an "Inmate Orientation" on July 19, 2002.  (Ambulatory Health Records ("AHR") submitted at Dkt. No. 43, Sealed Exhibit at July 19, 2002).  According to plaintiff's Dental Treatment Records which are attached to the Declaration of Michael Guldan , DDS, plaintiff requested a dental cleaning and examination on July 25, 2002.  (Dental Treatment Record ("DTR") submitted at Dkt. No. 43, Exhibit A of Dr. Guldan's Decl. at July 25, 2002).  Exhibit A to plaintiff's Amended Complaint is a form showing that plaintiff requested a dental consultation for "cavities, need cleaning, need check-up."  (AC, Exhibit A).  The form appears to have been initialed by Dr. Guldan, a dentist at Upstate Correctional Facility, on either July 25 or July 26, 2002.  *Id*.  On July 25, 2002, Dr. Guldan's notes state "examined plaintiff's teeth through the

window of his cell door and I did not observe any gross caries or overt signs of dental pathology, nor did plaintiff report feeling any pain." (Dkt. No. 43, Dr. Guldan's Decl. at ¶ 4). It appears that Dr. Guldan placed plaintiff on a waiting list for a dental examination, and the dental treatment records show an entry "on 10 Block list" by Dental Assistant by P. Boyea. (DTR at July 25, 2002).

On December 3, 2002, plaintiff completed another form entitled "Dental Consult" (AC, Exhibit C). On that Dental Consult form, plaintiff wrote "Cavities, I need them filled please and I'm having a lot of Difficulty eating cause I'm missing 2 mauler [sic] Teeth. I need dentures." (AC, Exhibit C). The Dental Treatment Record has an entry that appears to state that plaintiff was "seen at his cell" about this request. (DTR at Dec. 3, 2002). The Dental Treatment Record shows Dr. Guldan's stamped name and appears to contain his initials for that entry. (DTR at Dec. 3, 2002).

Dr. Guldan's Declaration to this court states that he responded to plaintiff's cell on December 3, 2002, and believed that plaintiff's request was for "routine treatment," since plaintiff "reported no pain nor exhibited gross caries or overt signs of dental pathology." Dr. Guldan's Declaration states that plaintiff reported that he was having difficulty eating, but that Dr. Guldan disagreed with plaintiff's assessment that plaintiff needed dentures merely because he was missing two molar teeth. (Dkt. No. 43, Dr. Guldan's Decl. at ¶6). Dr. Guldan states that his professional judgment

4

was that plaintiff presented as a healthy thirty-year-old that did not need dentures.  In addition, Dr. Guldan stated that plaintiff was not eligible for dentures under the Medicaid guidelines.  (Dkt. No. 43, Dr. Guldan's Decl. at ¶ 6).  Dr. Guldan stated in his Declaration that plaintiff remained on the waiting list from December 3, 2002 until August 2004, when plaintiff was scheduled for the next available appointment on November 10, 2004.  *Id*. at ¶¶ 7-8[2].

> Paragraph 7 of Dr. Guldan's Declaration states that
>
> Plaintiff remained on the waiting list at that time, because the dental department was experiencing a staff shortage despite efforts by DOCS to hire additional dental staff.  Staffing was difficult due to the remote rural location of Upstate Correctional Facility, which is located close to the Canadian Border.

(Dkt. No. 43, Dr. Guldan's Decl. at ¶ 7).

According to Dr. Guldan, he "next heard from plaintiff in late August 2004, when he requested a dental consult."  (Dkt. No. 43, Dr. Guldan's Decl. at ¶ 8).  There are no entries in the Dental Treatment Record showing treatment between December 3, 2002 and November 10, 2004.  There is an entry in the Dental Treatment Record by Dental Assistant P. Dow that appears to show that plaintiff was "scheduled [for a treatment on] 11/10/04."  It is unclear when this entry was made.  The next entry in

---

[2]This statement seems to contradict the Dental Treatment Record, which indicates that plaintiff was scheduled for the November 10, 2004 appointment on December 3, 2002.  (DTR at December 3, 2002).  Dr. Guldan's statement seems to indicate that the dental assistant who scheduled the appointment failed to properly date his/her entry.  There is no date indicated next to the notation of the appointment, which makes it appear to be part of the entry for December 3, 2002.

the Dental Treatment Record shows an examination of plaintiff on November 10, 2004.

Plaintiff submits two letters that he claims he wrote to the Superintendent of Upstate Correctional Facility, one dated December 15, 2002 and the other dated March 23, 2003.  (AC, Exhibits D & E).  In the December 15, 2002 letter, plaintiff stated that the dental department "does not answer call outs" and that he had "some cavities that need tending."  (AC, Exhibit D).  Plaintiff also stated that one cavity in particular "is bothering me quite a bit . . ."  *Id*.  In the March 23, 2003 letter, plaintiff stated "this is my third letter to your office," and complained "this is an emergency, I am having a lot of pain . . ."  (AC, Exhibit E).  Plaintiff asked for help from the Superintendent "to get to the dentist" because the pain was "excruciating."  *Id*.

Plaintiff also submits an undated letter addressed as "Dear Sir/Mam [sic],"that requests an appointment with the dentist "because my tooth is falling apart . . ."  (AC, Exhibit F).  In his submission to this court, plaintiff included a note on the letter that states that the letter is "from dentist files," but nothing else on the letter indicates when or to whom the letter was written.

In his Amended Complaint, plaintiff includes two forms completed by Nurse Administrator ("NA") N. Smith, one dated August 13, 2004 and the other dated September 22, 2004.  (AC, Exhibits G & H).  On the August 13, 2004 form, NA Smith indicated that she had forwarded a letter from plaintiff to the Dental

Department, and wrote that she "[has] nothing to do with the dental area."  (AC, Exhibit G).  On September 22, 2004, NA Smith wrote "I have nothing to do with dental. . . Submit a dental request directly to dental."  (AC, Exhibit H).  It is unclear what prompted NA Smith to again write to plaintiff on September 22, 2004 that she was not responsible for dental care.

Plaintiff wrote a letter to Dr. Guldan on August 23, 2004 and stated that "I have written to your department numerous times for a cleaning and also to see about getting some dentures, but I never get a reply.  It's because of this that one of my teeth is deteriorating badly causing major discomfort."  (AC, Exhibit K).  Dr. Guldan stated that as a result of this letter, plaintiff was scheduled for the appointment in November 2004.  (Dkt. No. 43, Dr. Guldan's Decl. at ¶ 8).  Plaintiff wrote a similar letter to Dr. Guldan the next day on August 24, 2004.  (AC, Exhibit L).

The first note in plaintiff's Ambulatory Health Record regarding his teeth was written on October 12, 2004, when a nurse noted "dental request only," and stated "refer to dental as requested."  (AHR at Oct. 12, 2004).  The next entry is dated October 21, 2004 and states "dental consult made at inmate request per NSC [dated] 10/20/04".  (AHR at Oct. 21, 2004).  One nurse made two separate entries in the AHR on October 26, 2004.  (AHR at Oct. 26, 2004).  The first October 26, 2004 entry shows that the nurse did not observe any facial swelling or redness, but dispensed ibuprofen and an oral rinse to plaintiff.  *Id*.  The nurse noted that plaintiff was

"already referred to dental." *Id*. The second October 26, 2004 entry indicates that two corrections officers approached the nurse regarding plaintiff's toothache. *Id*. The nurse noted that the Dental Department had been contacted. *Id*. On October 30, 2004, plaintiff again requested a dental examination from a nurse. (AHR at Oct. 30, 2004). The nurse did not observe any signs of infection, and wrote that "slip has been sent to dental and [plaintiff] is to be seen soon." *Id*.

Dr. Guldan examined plaintiff on November 10, 2004. Dr. Guldan found that plaintiff's "bitewing X-rays revealed that plaintiff's tooth number 5 was seriously decayed and required immediate extraction. Plaintiff also required restoration, or fillings, of teeth 2, 3 and 4." (Dkt. No. 43, Dr. Guldan Decl. at ¶ 10). Dr. Guldan then "scheduled plaintiff for the earliest available appointment with an oral surgeon, who extracted the tooth on November 24, 2004." *Id*. at ¶ 11; *see also* DTR at Nov. 10, 2004 and Nov. 24, 2004. On February 2, 2005, Dr. Guldan filled cavities in plaintiff's teeth 2, 3 and 4. (DTR at Feb. 2, 2005).[3]

---

[3]Plaintiff claims there is a discrepancy in his Dental Treatment Record, and alleges that the "defendants did alter the record purposely, to deceive the court." (Dkt. No. 53, Mem. of Law at 8). The discrepancy occurs at the end of the November 10, 2004 entry in the Dental Treatment Record. *Cf*. DTR at Nov. 10, 2004 and AC, Exhibit B at Nov. 10, 2004. In one version, the notation at the end of the November 10, 2004 entry states "Sch. 2/2/05 w/ Hoehn." (DTR at Nov. 10, 2004). The plaintiff submits the same document, but the copy of the original was made sometime between the November 24, 2004 entry and the December 6, 2004 entry, and does not reflect any of the entries after November 24, 2004. (AC, Exhibit B). On plaintiff's copy of his Dental Treatment Record, the notation at the end of the November 10, 2004 entry states "Sch. 2/2/05." (AC, Exhibit B at Nov. 10, 2004). It is unclear why the Dental Assistant added the "w/ Hoehn" notation when the February 2, 2005 appointment was conducted by Dr. Guldan.

Plaintiff's allegation is that the alteration was done so that this court "would be deceived into thinking that defendant Guldan scheduled the plaintiff for an extraction with Dr. Hoehn on

Plaintiff made additional complaints about his teeth to a nurse on February 13, 2005, and requested to see the dentist. (AHR at Feb. 13, 2005). The nurse observed no facial redness or swelling, and gave plaintiff some ibuprofen packets. *Id*. Plaintiff again complained of tooth pain on March 19, 2005, and stated that the tooth next to the extraction "is causing a great deal of pain." (AHR at March 19, 2005). The nurse noted "Dental Request Sent 3/19/05 2nd request." *Id*. On March 20, 2005, plaintiff asked again to see the dentist "soon," and complained that the pain from his tooth had spread to his right ear. (AHR at March 20, 2005). The nurse observed no sign of infection in plaintiff's right ear, and dispensed four Tylenol packets to plaintiff. *Id*.

Plaintiff complained about pain in his ear again on March 21, 2005. (AHR at March 21, 2005). Plaintiff told the nurse "my ear is really hurting." *Id*. The nurse observed "redness ear ear canal. No bulging membrane." *Id*. The nurse prescribed a sinus decongestant and ibuprofen, and wrote "have MD eval R ear on 3-22-05." *Id*. On the same day, a different nurse wrote that a call had been placed to the Dental Department regarding plaintiff's toothache. (AHR at March 21, 2005(2)). Dr. Silver, a dentist at Upstate Correctional Facility, visited plaintiff in his cell on March 21, 2005. (DTR at March 21, 2005). Dr. Silver stated that plaintiff complained of "severe thermal sensitivity," and advised plaintiff to avoid extreme temperatures and to use a "saline soak." *Id*. Dr. Silver scheduled plaintiff for an appointment on April

---

2-2-05 and as a result of doing so, the plaintiff was seen earlier by Dr. Hoehn." This claimed discrepancy is not relevant to plaintiff's claims about the delay in and quality of his care.

20, 2005.  *Id*.

The next day, March 22, 2005, plaintiff again complained about a toothache and pain in his ear.  (AHR at March 22, 2005).  It is unclear who made the first entry on March 22, 2005.  The first March 22, 2005 entry states "R ear pain Referred from R upper molar defer back to Dental."  (AHR at March 22, 2005(1)).  On the same entry RN Walsh wrote "Dental contacted 3-22-05."  (AHR at March 22, 2005(1)).  A second entry on March 22, 2005 shows another complaint about a toothache and earache.  (AHR at March 22, 2005(2)).  The nurse noted "Dental aware of tooth problem."  *Id*.  Two days later, on March 24, 2005, plaintiff again complained that his ear was hurting, and the nurse noted that plaintiff "has been referred back to Dental." (AHR at March 24, 2005).

Plaintiff's scheduled dental appointment on April 20, 2005 did not take place because no dentist was present at Upstate Correctional Facility that day.  (DTR at April 20, 2005).  Plaintiff was rescheduled for April 27, 2005.  *Id*.  The April 27, 2005 appointment also did not take place because the dental staff ran out of time. (DTR at April 27, 2005).  Plaintiff was rescheduled for May 18, 2005.  *Id*.

Dr. Guldan examined plaintiff on May 18, 2005.  According to Dr. Guldan, "[p]laintiff stated that he was still experiencing pain in tooth 4.  I advised him that the only remaining option was to extract the tooth, as the effort to save the tooth by filling it back in February 2005 was apparently not effective."  (Dkt. No. 43, Dr.

10

Guldan's Decl. at ¶ 20).  Plaintiff states that at the May 18, 2005 appointment, Dr.

Guldan accused plaintiff of harassment.  (AC at ¶ 21).  Dr. Guldan states that "[a]t no

time did I accuse plaintiff of harassing me or otherwise discourage him from using

the facility grievance procedure, as he contends . . .  Plaintiff was argumentative at

times, but I did not treat him any differently than I would have if he had not been

argumentative or had not filed grievances against me."  (Dkt. No. 43, Dr. Guldan's

Decl. at ¶ 21).

Plaintiff was scheduled for another appointment on August 3, 2005.  (DTR at

May 31, 2005).  On August 10, 2005, Dr. Guldan wrote that "Pt refussed [sic]

scheduled dental Tx today . . ."  (DTR at Aug. 10, 2005).  Plaintiff states that

> [t]he constant scheduling and re-scheduling . . . led the plaintiff to
> believe that defendant Guldan was not capable of giving the plaintiff
> quality care so on 8-10-05 the plaintiff refused the appointment with
> defendant Guldan in hopes that he could see another dentist.  The
> plaintiff was not aware that the scheduled date of 8-10-05 was for
> extraction because the original scheduled day was for 8-3-05.  The
> plaintiff decided to keep tooth #4 in hopes that he can get help from an
> outside provider once he is released.  The plaintiff does not believe that
> defendant Guldan can extract tooth #4 without causing harm.

(Dkt. No. 53, Mem. of Law at 10).

In late 2004, plaintiff filed a grievance[4] with the Inmate Grievance Review

Committee ("IGRC").  On December 16, 2004, the IGRC found that

> [p]er Dental, [plaintiff] arrived at Upstate on 7/22/02.  On 7/25/02
> [plaintiff] was seen at his cell by Dental and requested a cleaning.  On

---

[4]Neither plaintiff nor defendants have supplied the court with a copy of this grievance.

12/3/02, [plaintiff] was seen again by Dental at his cell and again
requested a cleaning.  On 11/10/04, [plaintiff] was seen and x-rays were
taken.  On 11/24/04, [plaintiff] had a tooth extracted.  Per Dental, they
have no knowledge of [plaintff] requesting numerous call outs . . .

(AC, Exhibit I).  Plaintiff appealed this decision to Superintendent Woods, who

accepted the grievance "in part as [plaintiff] is currently under active dental care."

(AC, Exhibit J).  The court has not received any other documents related to this

grievance, and has no documents showing an appeal to the Central Office Review

Committee ("CORC"), or records showing the *absence* of an appeal to CORC.

Plaintiff submits three additional IGRC decisions dated May 10, 2005, July 28,

2005, and September 20, 2005.  (AC, Exhibit M; Dkt. No. 53, Exhibits J & E).  No

other supporting documentation related to the grievances or any appeals of the

IGRC's decisions has been submitted to the court.  On May 10, 2005, the IGRC

found that no dentist was available for plaintiff's April 20, 2005 appointment, but that

he had been "re-scheduled for an appointment in the near future."  (AC, Exhibit M).

On July 28, 2005, the IGRC found that plaintiff

has been seen on numerous occasions by the dentist. [Plaintiff] is
scheduled to be seen in the near future.  The dentist employed to [sic]
this facility is the only dentist available. [Plaintiff] is not entitled to a
second medical opinion solely upon request. [Plaintiff] may consult with
an outside provider, at his own expense . . .

(Dkt. No. 53, Exhibit J).

On September 20, 2005, the IGRC found that plaintiff

was scheduled on 8/10/05 for a clinical dental appointment. [Plaintiff]

refused the appointment when he was at his cell when he found out that Dr. Guldan was the dentist to look at him.  Dr. Silver only does clinics for 9-block and 12-block on scheduled days. [Plaintiff] is not entitled to a second medical opinion solely upon request. [Plaintiff] may consult with an outside provider, at his own expense . . .

(Dkt. No. 53, Exhibit E).

3.   **Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal action.  This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes and regardless of the subject matter of the claim. *See e.g. Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675. The failure to exhaust is an affirmative defense that must be raised by the defendants. *Scott v. Del Signore*, 2005 U.S. 6070, *12-15 (W.D.N.Y. Feb. 18, 2005) (citing *inter alia Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004)).  As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *Id.* at * 12-13 (citing *Giano,* 380 F.3d at 675).

In *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 922-23 (2007), the Supreme Court held that in order to properly exhaust an inmate's administrative remedies, he must complete the administrative review process in accordance with the applicable

13

state rules. *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)).  In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103.  In *Woodford*, the Court concluded that the inmates did not properly exhaust their administrative remedies when their grievances were dismissed because the inmates had missed the deadlines set forth in the grievance procedure. *Id.* at 93.

 *Jones* was decided after *Woodford* and elaborated further upon the definition of proper exhaustion.  In *Jones*, the lower court had imposed a "name all defendants requirement," when the rules governing the grievance procedure simply required the plaintiff to be "as specific as possible." 127 S. Ct. at 922.  The Court in *Jones* held that proper exhaustion does ***not*** necessarily include a requirement that an inmate name all the defendants, unless the state procedure required it. *Id.* at 922-23.

 The grievance procedure in New York is a three-tiered process.  The inmate must first file a grievance with the Inmate Grievance Resolution Committee (IGRC). N.Y. COMP. CODES R. & REGS., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility.  *Id*. § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee (CORC). *Id*. § 701.5(d).  The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her

complaints through the guidance and counseling unit, the program area directly

affected, or other existing channels (informal or formal) prior to submitting a

grievance." *Id.* § 701.3(a)(Inmate's Responsibility).

In this case, the court does ***not*** have all the documents relating to plaintiff's

grievances.  The earliest grievance filed by plaintiff appears to have been filed some

time in December of 2004 since the IGRC decision is dated December 16, 2004.

(AC, Exhibit I).  Plaintiff appealed that decision to the Superintendent, who

responded on January 11, 2005, stating that the grievance was "accepted in part as

grievant is currently under active dental care."  (AC, Exhibit J).  There is no decision

from the CORC in the record, however, at plaintiff's deposition, he claimed that he

filed appeals of all[5] of his grievances.  (Dkt. No. 43, Roth Aff., Exhibit A, Deposition

(Depo.) at 69).

Defendants do ***not*** argue that plaintiff failed to exhaust his administrative

remedies because he failed to file an appeal with the CORC.  Instead, the defendants

argue that plaintiff did not properly exhaust his administrative remedies because he

did not file his grievance until after he began receiving care from Dr. Guldan. (Dkt.

No. 43, Def. Mem. of Law at 10).  Defendants claim that because plaintiff filed his

---

[5] At his deposition, plaintiff alleged that he filed multiple grievances.  (Depo. at 69).
This court has some documentation regarding a total of four grievances.  Only one of the
grievances was filed and appealed prior to the filing of plaintiff's initial complaint on March 17,
2005.  However, plaintiff need only complete the review process once with respect to each claim
that he makes. *Woodford,* 548 U.S. at 90-103.  Thus, this court will focus on the grievance filed
by plaintiff in late 2004.

grievance "after the fact," he did not afford defendants an opportunity to correct plaintiff's complaint and "minimize any delay in providing dental care." *Id.* at 11.

This court does not agree with defendants' argument.  As stated above, the plaintiff must complete the administrative review process in accordance with the applicable state rules.  *Jones, supra*.  Although it is unclear from the documents provided whether plaintiff appealed the 2004 grievance to the CORC, plaintiff testified under oath at his deposition that he did appeal to the CORC, and defendants do ***not*** argue otherwise.  Defendants could have easily argued, and presented the affidavit of someone at the CORC, that there was no record of an appeal of plaintiff's grievance.

The court turns to defendants' argument that plaintiff did not file the grievance soon enough.  The court notes that the New York State regulations encourage inmates to attempt to resolve their issues with any existing channels ***prior*** to filing a grievance.  There are letters in the court file that could be considered attempts to resolve the issue through "other channels," even though plaintiff may have been writing to the incorrect individuals.  *See* AC, Exhibit D (December 2002 letter to Superintendent); Exhibit E (March 23, 2003 letter to Superintendent); Exhibit F (undated letter).  In August of 2004, plaintiff wrote a letter, requesting assistance from the dental department.  (AC, Exhibit K).

Plaintiff filed his grievance in late 2004.  Plaintiff appears to have complained

16

about the delay in his dental care, although the court cannot tell from the IGRC response itself.  The fact that plaintiff obtained his tooth extraction prior to the grievance being filed would not prevent him from complaining about the delay, the *effect* of the delay, or about the care itself.  The New York State regulations do *not* impose such a requirement.  Unfortunately, this court has not been provided with the 2004 grievance itself, however, as stated above, it is the ***defendants' burden*** to show that plaintiff has not exhausted his administrative remedies.  Defendants have not met this burden, and the court will not recommend granting summary judgment based upon plaintiff's failure to exhaust his administrative remedies.  At best, there are questions of fact regarding whether plaintiff properly exhausted his administrative remedies.  The court will proceed to consider the merits of plaintiff's dental care claims.

**4.**   **Respondeat Superior and Personal Involvement**

It is well-settled that in order to be held liable for damages in a section 1983 action a defendant must have been personally involved in the alleged violation. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978).  The doctrine of respondeat superior is inapplicable to section 1983 claims.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973), *cert. denied*, 414 U.S. 1033 (1973).

In *Williams v. Smith*, the Second Circuit detailed the various ways in which a

defendant can be personally involved, and thus be subject to individual liability, in a constitutional deprivation. *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986). A supervisory official is said to have been personally involved if that official directly participated in the infraction. *Id*. A supervisory official is said to have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id*. Personal involvement of a supervisory official is said to exist if he or she created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id*. Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id*.

Defendants argue that plaintiff has not alleged sufficient personal involvement by either Defendant Superintendent Woods or Defendant Nurse Administrator Smith. (Dkt. No. 43, Mem. of Law at 11-12). Plaintiff alleges that Defendant Smith "could have made certain that plaintiff was put on a call out to receive emergency medical dental assistance." (AC at ¶ 11).

Defendant Smith's involvement in this case is limited to the two letters from plaintiff and her responses to the letters. In the first instance, in August 2004, Defendant Smith stated that she had "nothing to do with the dental area," and that plaintiff's request had been forwarded to the Dental Department.[6] (AC, Exhibit G).

---

[6]The court notes that within approximately two weeks of her action of forwarding plaintiff's *first* letter to the Dental Department, plaintiff was scheduled for the "next available

In the second instance, in September 2004, Defendant Smith again stated that she had "nothing to do with dental," and explained that the process required that plaintiff submit a request directly to the Dental Department.  (AC, Exhibit H).  This very limited correspondence with plaintiff at the very end of his long wait to be scheduled for a dental examination does not sufficiently involve Defendant Smith in any alleged constitutional violation caused by the delay in care or the actual dental care. Defendant Smith clearly told plaintiff that dental care was the responsibility of the Dental Department and plaintiff should contact the Dental Department.

Plaintiff alleges that Superintendent Woods "could have made the necessary phone calls and or arrangements to ensure that an inmate asking for emergency medical dental care gets that assistance.  Defendant[] Robert K. Woods . . . ignored plaintiff's pleas for help."  (AC at ¶13).  Superintendent Woods commenced his employment at Upstate Correctional Facility on *June 17, 2004*.  (Dkt. No. 43, Supt. Woods's Decl. at ¶ 3).  The letters dated December 15, 2002 and March 23, 2003 that plaintiff claims he sent to the Superintendent were dated well *before* the beginning of Superintendent Woods's employment in June 2004.  (AC, Exhibits D & E). Superintendent Woods was not aware of any of plaintiff's complaints before Superintendent Woods arrived at the facility, and was not in a position to assist

---

appointment."  (Dkt. No. 43, Dr. Guldan's Decl. at ¶ 8).  The very short amount of time between the first instance where she was contacted and the eventual scheduling of an appointment should preclude her personal involvement in any delay dating back to 2002.

plaintiff before his arrival.  *Id*.  The first complaint or grievance of which

Superintendent Woods was aware was the grievance filed in ***late 2004***.  *Id*. at ¶ 4.

Superintendent Woods ***accepted*** plaintiff's grievance in part, but found that plaintiff

was "currently under active dental care."  (AC, Exhibit J).  It is not clear whether

plaintiff appealed any of the three additional IGRC decisions dated May 10, 2005,

July 28, 2005, and September 20, 2005 to Superintendent Woods.  (AC, Exhibit M;

Dkt. No. 53, Exhibits J & E).  This court finds that Superintendent Woods was not

sufficiently personally involved in any alleged constitutional violations to allow any

claims against him to survive summary judgment.

The motion for summary judgment should be granted as against Defendants

Nurse Administrator Smith and Superintendent Woods.

## 5.   <u>Medical Care</u>

In order to state an Eighth Amendment claim based on constitutionally

inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently

harmful to evidence deliberate indifference to serious medical needs."  *Estelle v.*

*Gamble*, 429 U.S. 97, 106 (1976).  There are two elements to the deliberate

indifference standard.  *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).  The

first element is ***objective*** and measures the severity of the deprivation, while the

second element is ***subjective*** and ensures that the defendant acted with a sufficiently

culpable state of mind.  *Id*. at 184 (citing *inter alia Chance v. Armstrong*, 143 F.3d

698, 702 (2d Cir. 1998)).

In order to meet the first element of the standard, plaintiff must show that he has a sufficiently serious illness or injury. *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition has been considered "sufficiently serious" when there is a "condition of urgency," one that may result in death, degeneration, or extreme pain. *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). The seriousness of a plaintiff's medical need may also be determined by reference to the effect of denying the particular treatment. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 310 (S.D.N.Y. 2001)(citation omitted). Thus, if unnecessary and wanton infliction of pain results from the denial of treatment, or if the denial of treatment causes the inmate to suffer a lifelong handicap or permanent loss, the condition may be considered "sufficiently serious." *Id.* (citing *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000). In *Harrison*, the Second Circuit held that

> Ordinarily, a tooth cavity is not a serious medical condition, but that is at least in part because a cavity is so easily treatable. Absent intense pain or other exigency, the treatment of a cavity (in or out of prison) can safely be delayed by the dentist's schedule or the patient's dread or neglect, can be subject to triage or the management of care, can be mitigated or repaired temporarily, and can be coordinated with other related conditions that need to be treated together. Nevertheless, a tooth cavity is a degenerative condition, and if it is left untreated indefinitely, it is likely to produce agony and to require more invasive and painful treatments, such as root canal therapy or extraction. Consequently, because a tooth cavity will degenerate with increasingly serious implications if neglected over sufficient time, it presents a "serious medical need" within the meaning of our case law.

21

*Harrison*, 219 F.3d at 137.

In order to meet the second element of the standard, plaintiff must demonstrate more than an "inadvertent" or negligent failure to provide adequate medical care. *Id*. (citing *Estelle*, 429 U.S. at 105-106). Instead, plaintiff must show that the defendant was "deliberately indifferent" to that serious medical condition. *Id*. In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety. *Id*. (citing *Chance*, 143 F.3d at 702). The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference. *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

In *Harrison*, the Second Circuit noted that "[d]istrict courts in this Circuit have ruled that a one-year delay in treating a cavity can evidence deliberate indifference on the part of prison officials . . ." *Harrison*, 219 F.3d at 138, citing *Williams v. Scully*, 552 F. Supp. 431, 432 (S.D.N.Y. 1982) (finding a material issue of fact as to deliberate indifference after an inmate was made to wait five and a half months for refilling of a cavity, resulting in infection and loss of the tooth). The Second Circuit held that "outright refusal of any treatment for a degenerative condition that tends to cause acute infection and pain if left untreated" constitutes deliberate indifference. *Harrison*, 219 F.3d at 138.

Disagreement with prescribed treatment does *not* rise to the level of a constitutional claim. *Sonds*, 151 F. Supp. 2d at 311. Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id*. (citations omitted). An inmate does *not* have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1086). The fact that plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id*.

Thus, disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. *Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle*, 429 U.S. at 107). Even if those medical judgments amount to negligence or malpractice, malpractice does *not* become a constitutional violation simply because the plaintiff is an inmate. *Id*. *See also Daniels v. Williams*, 474 U.S. 327, 332 (1986)(negligence not actionable under Section 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under Section 1983.

Plaintiff lists three causes of action in his Amended Complaint: (1) that defendants ignored the dental needs of plaintiff and were deliberately indifferent to plaintiff's serious medical need, (2) that the care plaintiff received from the Dental Department at Upstate Correctional Facility "was and still is inadequate and very unprofessional," and (3) that "the screening process for determining whether a patient

needs serious dental attention" is deficient.  (AC at 11-12).  Plaintiff's third claim is

essentially a part of his first claim: that in the months prior to August 2004 when

plaintiff was scheduled for a dental examination, defendants ignored plaintiff and

were deliberately indifferent to his serious medical need.  Since plaintiff's claims

against Defendants Superintendent Woods and Nurse Administrator Smith may be

dismissed on other grounds, the two claims about plaintiff's dental care remain only

against Defendant Dr. Guldan.

Plaintiff's claims against Dr. Guldan encompass two periods of time.  The first

claim consists of the months after plaintiff's transfer to Upstate Correctional Facility

and while he was waiting for dental treatment.  The second claim includes the months

between the beginning of his treatment and the filing of his Amended Complaint.

Dr. Guldan's counsel argues that "plaintiff cannot demonstrate the purported

deprivation was sufficiently serious."  (Dkt. No. 43, Mem. of Law at 13).  Dr. Guldan

stated that on the first occasion he visited plaintiff in July 2002, he "examined

plaintiff's teeth through the window of his cell door and . . . did not observe any gross

caries or overt signs of dental pathology, nor did plaintiff report feeling any pain."

(Dkt. No. 43, Dr. Guldan's Decl. at ¶ 4).  On December 3, 2002, during another

"examination" of plaintiff's teeth at his cell, Dr. Guldan states that plaintiff "reported

no pain nor exhibited gross caries or overt signs of dental pathology."  *Id*. at ¶ 6.  Dr.

Guldan stated that plaintiff "remained on the waiting list at that time, because the

dental department was experiencing a staff shortage despite efforts by DOCS to hire additional dental staff." *Id*. at ¶ 7.  Plaintiff apparently remained on the waiting list until he wrote a letter dated August 23, 2004, at which time plaintiff was scheduled for the "next available" appointment. *Id*. at ¶ 8.  Dr. Guldan stated that he did not hear from plaintiff between December 2002 and August 2004. *Id*. at ¶¶ 7-8.

Plaintiff was examined on November 10, 2004.  The result of the November 10, 2004 appointment was that plaintiff's "tooth number 5 was seriously decayed and required immediate extraction." *Id*. at ¶ 10.  The extraction was performed by an oral surgeon two weeks later on November 24, 2004. *Id*. at ¶ 11.  An extraction of tooth number 4 was eventually planned in August 2005 after efforts to save the tooth failed. (*See* DTR at May 9, 2005, May 18, 2005, May 31, 2005).  According to Dr. Guldan, plaintiff refused to leave his cell for the scheduled extraction.  (DTR at August 10, 2005).  It is unclear from the Dental Treatment Record whether the extraction of tooth number 4 was eventually performed.

Dr. Guldan's position is that absent intense pain or other exigency, a cavity is not a serious medical need.  Dr. Guldan relies on the Ambulatory Health Record to show that plaintiff did not complain about his dental care and dental pain to the medical staff "until 2004 and later."  (Dkt. No. 43, Mem. of Law at 14).  Defense counsel argues that when plaintiff first complained to the medical staff about a toothache in late October 2004, "Dr. Guldan promptly examined him and formulated

a treatment plan." *Id*.  The court notes that Dr. Guldan did not make a record of any

examination in October 2004.  In his declaration, Dr. Guldan references plaintiff's

sick calls in October 2004, but noted only that the nurse found "no facial swelling,

redness, or other signs of infection," and that the nurse disbursed some over the

counter pain medication.  (Dkt. No. 43, Dr. Guldan's Decl. at ¶ 9).

Dr. Guldan's counsel states that there is no evidence indicating that plaintiff

experienced intense pain or other exigent circumstance during that time period:

"Other than two requests for routine care, plaintiff never requested emergency sick

call for tooth pain or otherwise requested intervention for the pain that, in retrospect,

he describes as 'unbearable.'" (Dkt. No. 43, Mem. of Law at 13-14).

Plaintiff submits some evidence indicating that he contacted the Dental

Department between July 2002 and August 2004.  The August 2004 letter to Dr.

Guldan that prompted the scheduling of the initial clinic dental examination includes

the statement that "I have written to your department numerous times for a cleaning

and also to see about getting some dentures, but I never get a reply.  It's because of

this that one of my teeth is deteriorating badly causing major discomfort."  (AC,

Exhibit K).  The August 2004 letter is stamped with an Upstate Correctional Facility

stamp indicating receipt of the letter on August 24, 2004.  Plaintiff submits three

other letters, two addressed to the Superintendent (AC, Exhibits D (Dec. 15, 2002) &

E (March 23, 2003)) and one addressed to the dentist (AC, Exhibit F (undated)), that

all indicate a need to see the dentist.  These letters do not appear to have been

stamped with a receipt date, and it is unclear from the documents themselves whether

plaintiff purports that the documents are hand-written copies of original documents,

or whether these letters ever reached their intended recipients.  Despite the somewhat

limited evidence of complaints in the period between July 2002 and August 2004,

plaintiff maintains that he complained of "unbearable" pain in his teeth during this

time period.

In this case, there is a clear issue of material fact as to whether, ***objectively***,

plaintiff's cavities and the deterioration of plaintiff's teeth was a serious medical

need.  The only dental examinations that plaintiff received between July 2002 and

August 2004 were through his cell window.  Although Dr. Guldan states that he did

not observe any gross cavities or signs of dental pathology in July or December 2002,

and that there was a dental staff shortage during that time, this does not explain a

delay of twenty-four months before plaintiff was even scheduled for a routine dental

examination.  The result of the delay was the extraction of one tooth, the

recommendation of extraction of another, and cavities filled in two other teeth.  There

is a material issue of fact about whether plaintiff experienced intense pain or some

other exigent circumstance in the months between his initial complaint in July 2002

and the eventual scheduling of an appointment in August 2004.  A jury might

reasonably find on the evidence presented to this court in the motion papers, that

plaintiff did, in fact, experience a serious medical need that was ignored.

Dr. Guldan argues that "even if plaintiff was in intense pain or had a rapidly decaying condition between 2002 and 2004, Dr. Guldan was not aware of these facts such that one could conclude that he acted with a conscious disregard of a substantial risk of serious harm." (Dkt. No. 43, Mem. of Law at 14). As noted above, a one-year delay in treating a cavity can constitute deliberate indifference. *Harrison*, 219 F.3d at 138. Also, as noted above, "outright refusal of any treatment for a degenerative condition that tends to cause acute infection and pain if left untreated" constitutes deliberate indifference. *Harrison*, 219 F.3d at 138.

In this case, plaintiff was subject to a delay of approximately 25 months between his initial request for a dental examination and ***actually scheduling*** an appointment.[7] Plaintiff then waited another three months for the "next available appointment." A genuine issue of fact exists on the ***subjective*** second element of the standard for deliberate indifference. With respect to plaintiff's first claim against Dr. Guldan, that the delay in treatment from July 2002 to August (scheduled appointment) or November (appointment occurred) 2004 constituted deliberate indifferent to a serious medical need, it is recommended that the motion for summary

---

[7]Dr. Guldan and plaintiff have both stated that plaintiff was put on a waiting list no later than December 3, 2002. Plaintiff sought to obtain evidence of the waiting list for his section of Upstate Correctional Facility for the time period in question. (Dkt. No. 53, Exhibit A). The person who replied to his FOIL request indicated that the record was unavailable because it was "not in chart" and "not kept." (Dkt. No. 53, Exhibit B).

judgment be denied.

With respect to plaintiff's second claim, that the dental care he has received since November 2004 has been inadequate and unprofessional, the motion for summary judgment in Dr. Guldan's favor should be granted.  Plaintiff's Dental Treatment Record shows that he has received regular and ongoing dental treatments after November 2004.  (DTR at Nov. 24, 2004; Feb. 2, 2005; Feb. 16, 2005; March 21, 2005; May 18, 2005; Feb. 13, 2006; March 23, 2006;  June 22, 2006; March 1, 2007).  According to plaintiff, he thought that one of Dr. Guldan's fillings was inadequately performed (AC at 5-6, 7), and he believed that Dr. Guldan was "not capable of giving plaintiff quality care . . ."  (Dkt. No. 53, Stmt. of Mat. Facts at ¶ 24).  If plaintiff did not trust Dr. Guldan, or disagreed with any of Dr. Guldan's diagnoses or treatments, plaintiff does not have a valid claim in this court.  Likewise, if some dental treatments caused plaintiff some pain, or if plaintiff wanted to see another dentist, these issues do not constitute deliberate indifference to a serious medical need.

Certainly the delay in plaintiff's dental treatment may have impacted some of his later dental conditions,.  Once plaintiff began receiving dental care in November 2004, it is clear that there has been no deliberate indifference to plaintiff's serious medical need for dental care.  To the extent that plaintiff alleges a constitutional violation in the care that he received since November 2004, Dr. Guldan's motion for

summary judgment may be granted.

**WHEREFORE**, based on the findings above, it is hereby

**RECOMMENDED,** that with respect to *all* claims against Defendants Nurse Administrator Smith and Superintendent Woods, defendants' motion for summary judgment (Dkt. No. 43) be **GRANTED**; and it is further

**RECOMMENDED,** that with respect to plaintiff's first claim against Defendant Dr. Guldan, that the 25-month delay in treatment constituted deliberate indifference to a serious medical need, the motion for summary judgment (Dkt. No. 43) be **DENIED**; and it is further

**RECOMMENDED**, that plaintiff's second claim against Dr. Guldan, that the dental care received by plaintiff after November 2004 was inadequate and deliberately indifferent to a serious medical need, defendants' motion for summary judgment be **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's cross-motion for summary judgment be **DENIED** in all respects.


Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Date: September 11, 2008

Hon. Gustave J. DiBianco
U.S. Magistrate Judge

31